LYDIA MILLS, impleaded, &c. *vs.* WILLIAM T. MILLS and others.

A testator by his last will directed that on his youngest child coming of age one third part of his estate should be set apart and invested for the use of his wife during her life, and at her death it was to be divided among his children. The " residue" of his estate he also directed to be divided among his children. The provision in favor of the widow was not declared to be in lieu of her dower. *Held* that the widow was not bound to elect between her dower and the provision made for her by the will, but was entitled to both. CLERKE, J. dissented.

THE husband of the plaintiff being possessed of a large real estate, in and by his last will directed that on his youngest child coming of age, one third part of his estate should be set apart and invested for the use of his wife during her life, and at her death it was to be divided among his children. The "residue" of his estate he directed to be divided among his children. The provisions of the will were not declared to be in lieu and bar of the widow's dower. On partition the referee reported that the widow was entitled to dower in the whole estate of her husband, in addition to this provision for her during life. This decision of the referee was overruled at special term, and a judgment entered, declaring that the widow was not entitled to dower in the estate, but that this provision was to be deemed and taken to be in lieu and bar of dower.

From this judgment an appeal was taken by the widow.

*M. S. Bidwell,* and *G. R. Hart,* for the appellant.

*Geo. Thompson,* for the respondent.

DAVIES, P. J. Dower is a species of life estate, created by the act of the law, and it exists where a man is seised of an estate of inheritance and dies in the lifetime of his wife. (4 *Kent's Com.* 35.) It cannot be extinguished by the husband alone ; nor can he defeat it by any act in the nature of alienation or charge, without the assent of the wife given and

procured according to law. (*Id. p.* 53.) The same learned commentator says that the testamentary disposition in lieu of dower, in order to render it such, even with the widow's acceptance of it, must be declared in express terms, to be given in lieu of dower, or that intention must be deduced by clear and manifest implication from the will, founded on the fact that the claim of dower would be inconsistent with the will, or so repugnant to its dispositions as to distract and defeat them. (4 *Kent's Com.* 62.)

The court of appeals in *Sheldon* v. *Bliss*, (4 *Seld.* 31,) by Gardiner, J., enunciate the rule that " it is an established principle that a provision in the will of a husband, in favor of the wife, will never be construed by implication to be in lieu of dower or any other interest in his estate given by law; the design to substitute the one for the other must be unequivocally expressed."

In the case of *Leonard* v. *Steele*, (4 *Barb.* 20,) a son inherited from his father, who died intestate, certain premises, subject to the dower therein of his mother. He devised a part of the real estate which descended to him from his father to his mother, and the residue to the defendant Steele. Paige J,. says : " The doctrine of election originates in incidental or alternative donations, where there is a clear intention of the person from whom one or both are derived, that one should be a substitute for the other."

And the question in that case was whether the widow should be put to her election. The learned justice says, "The testator owned the entire estate in these premises, subject to his mother's dower therein. He has not declared his intention, in his will, to dispose of the whole estate in these premises, including the dower of his mother, or that she should relinquish either such dower or the devise under the will, nor is such intention deducible by clear and manifest implication from the provisions of the will. The presumption, therefore, is that the testator intended only to devise to the defendant his own estate in the premises, subject to the dower of his

mother. The devise to the defendant is not necessarily incon-
sistent with Mrs. Leonard's (the mother's) right to dower; as
this devise is to be understood as being subject to all legal
claims upon the premises, including dower. The right to
dower being in itself a clear legal right, an intent to exclude
it, or that it should be relinquished, must be demonstrated by
express words or by manifest implication. In order to exclude
it the instrument itself should contain a provision inconsistent
with the assertion of such legal right." He cited *Story's Eq.*
§ 1088, *note* 3, *and Birmingham* v. *Kirwan*, (2 *Scho. &
Lef.* 452.)

So in the present case, the testator was seised of the prem-.
ises in question, subject to the inchoate right of dower of his
wife. It was a clear legal right in the whole estate, and an
intention to exclude her from any part of it and put her to
her election, must be demonstrated by clear words or by mani-
fest implication. There are no words manifesting such intent
contained in the will, and the case just cited is an authority
for the position that an absolute devise of a portion to the
doweress, and a devise of the residue to another, is not suffi-
cient to manifest or raise the implication of an intent to ex-
clude her. (*See also Sanford* v. *Jackson*, 10 *Paige*, 266.)

But the case of *Havens* v. *Havens*, (1 *Sandf. Ch. Rep.* 324,)
is more like the present case than any I have found. There
the testator devised to his wife, for life, the house and lot in
which he resided, and gave also to her large specific legacies,
which together amounted to nearly or quite half of his estate,
and gave the residue of his estate to his widow and brothers
and sisters, to be apportioned between them in accordance
with the directions of his will. And the assistant vice chan-
cellor (Sandford) held that these gifts were not inconsistent
with the widow's claim of dower in the residue of his real
estate which was devised to her, and to his brothers and sis-
ters, or in that of which he died intestate, and that she should
not be put to her election between her dower and the provis-
ions made for her by the will. He says, "suppose the testa-

tor died seised of a single house and lot after devising it to be divided between his widow and his brothers and sisters. The widow would, undeniably, take her dower and an equal interest, with each of the other devisees, in the residue. So if the devise had been of one third to her for life, and the residue to the brothers and sisters, she would take her dower and the other third under the will. The testator's interest in the residue *in this case,* and in the house and lot in the case put, which he could give by his will, *is the property subject to the dower right.* Out of this property which he has, less the inchoate right of his wife to her dower, he can carve such interest as he pleases, and his wife is as competent to take one or more of such interests as devisee as any other person." These positions are fully sustained by the authorities cited by the learned vice chancellor. It would seem, therefore, on authority, to be clear that in the present case the appellant was as competent to take as any other devisee, and such devise and taking in no wise affected or impaired her rights of dower in the whole estate, or compelled her to elect which she would take, dower or the devise. She is entitled to both.

The case of *Chalmers* v. *Storil,* (2 *Ves. & Beame,* 222,) has been cited and relied upon as authority for the contrary doctrine. In that case the testator gave to his widow and his daughter and son all his estates, to be divided *equally* among them. Sir William Grant, the master of the rolls, held that as to the widow's right to dower, whether she took, under the will, an absolute interest or for life only, it was a case of election, the claim of dower being directly inconsistent with the disposition of the will. "The testator directing all his real and personal estate to be equally divided, &c., the same equality is intended to take place in the division of the real as of the personal estate, which cannot be, if the widow first takes out of it her dower and then a third of the remaining two thirds." It was held to be a case of election, for the reason that the will directed the estate to be equally divided, and this direction of the will would fail altogether, if the widow

took her dower and the devise. The claim of dower in this case was inconsistent with the will, and so repugnant to its dispositions that to allow it would disturb and defeat them.

The principles applicable to a case like that now under consideration, are well and clearly stated by Kindersly, V. C., in *Gibson* v. *Gibson*, (17 *Eng. Law and Eq. Rep.* 349.) That case appears to have been elaborately argued and carefully considered, and all the authorities bearing upon the questions raised, cited and discussed. The testator gave to his wife certain specific chattels and a leasehold estate. He then gave all the residue of his estate to trustees to sell and dispose of the same, and gave out of his personal estate the sum of £4000 in trust for his wife during life, and as to the residue of his estate he gave one fourth part thereof absolutely to his wife, and the three other fourth parts thereof to the relatives. Held. that the widow of the testator was not to be put to her election, but was entitled to dower as well as the benefits given her by the will. The vice chancellor, in delivering his opinion, says: " It is difficult, perhaps impossible, to reconcile all the authorities on this subject, but we cannot examine them without finding certain broad and clear principles forming the foundation of every decision on the subject." He says the principles may be stated in the following manner. The first is that the doctrine of election is founded on the same reasons and governed by the same rules, when applied to a widow claiming dower, as when applied to any other case. The second proposition, applicable to all cases, is that a person who is entitled to any benefit under a will or other instrument, must, if he claims that benefit, abandon every right or interest, the assertion of which would defeat, even partially, any of the provisions of that instrument. And applying this to the case of dower, the doctrine is, that if the testator has made such a disposition of his real estate as that the assertion by the widow of her right to dower would prevent that disposition taking effect as the testator intended, then she must elect to abandon either her dower or the benefit given her by the will.

Mills *v.* Mills.

The third proposition is that in no case is a person to be put to an election, unless it is clear that the provision of the instrument under which he is entitled to any benefit, would be in some degree defeated by the assertion of his other right. And therefore in the particular case of dower, unless it is beyond reasonable doubt that the assertion by the widow of her right of dower would prevent the giving of full effect to the testator's intention, the widow shall not be put to her election. It is not enough to say that upon the whole will it may fairly be inferred that the testator intended his widow should not have her dower. In order to compel her to elect, the court must be satisfied that there is a *positive* intention, either expressed or *clearly* implied, that she is to be excluded from dower. The fourth proposition is, that the intention to exclude the widow from dower must be apparent on the face of the will itself. The vice chancellor reviews all the cases bearing on the points, and clearly shows that they fully sustain them.

In alluding to the case of *Chalmers* v. *Storil* he says, the decision in that case has been the subject of very just criticism, and he avows that the reasons assigned by Sir William Grant for it, are to his mind far from satisfactory. He then proceeds to show wherein that case differs from the one under consideration by him, and adds, that " whatever may be the respect due to the decision in *Chalmers* v. *Storil*, its authority must be confined to cases where the testator intends to give to his wife and the other objects of his bounty all that he himself possessed and enjoyed, in *equal* shares and proportions."

In the present case there is nothing in the will indicating the intention of the testator that his residuary and other devisees are to be put upon an equality. I cannot doubt, therefore, upon principle and authority, that the widow of the testator in this case takes the provision made for her by the will, and the dower given to her by law ; and that it is a case where she is not to be put to her election.

The judgment of the special term should therefore be re-

Mills *v.* Mills.

versed and a new trial ordered, costs of all the parties to be paid out of the funds of the estate.

INGRAHAM, J., concurred.

. CLERKE, J., (dissenting.)    The language of Judge Gardiner in *Sheldon* v. *Bliss,* (4 *Selden,* 35,) evidently transcends the limits of the rule on this subject; and, as the point did not expressly or necessarily arise in that case, under the consideration of the court, his proposition, in the unqualified terms in which he expresses it, should not be considered authoritative. His language is, that "the design to substitute one for the other [the provision in a will, for dower] must be unequivocally *expressed,*" omitting an equally important part of the rule, "or manifestly implied."    The question, in the present instance is, Is this design manifestly implied in this will? I venture to say that the more critically its several provisions are examined, it will be found that this claim of dower is clearly at variance with the testator's intention.    The design of substitution is manifestly implied.    Why should not the intention be the pole-star (as Coke calls it) to guide us in the interpretation of the will, in relation to a point involving a claim to dower, as well as in relation to a question involving any other claim.?    I see nothing in the suggestions of reason, or in the rules of construction, requiring any exceptional regard in favor of the former.    All the casual observations in judicial opinions, importing any thing of this kind, have no foundation in policy or law.    They are entirely gratuitous, and are the merest *dicta.*    I admit, indeed, that it is a good test, "whether the devises (or provisions) of the will are so utterly repugnant to the claim for dower, that they cannot stand together." (*Lewis* v. *Smith,* 5 *Selden,* 512.)    The appellant's claim to dower, in addition to the gift under the will, is repugnant to its whole scheme and scope; defeating the provision in favor of the other members of the testator's family.    The will gives to them two thirds; this claim would give them only one

Mills *v.* Mills.

third. The provisions of the one are, therefore, utterly inconsistent with the allowance of the other.

As to the circumstance mentioned by Judge Ingraham, that the will gives the appellant nothing in the residue, until after the youngest child arrives at age. Even if this were so, I do not think it would be of sufficient force to show that the testator intended to give his wife two-thirds of his property, and his children, of whom he had a considerable number, only one third. But, I think, the idea is a misapprehension, arising from the defective method in which the will is framed. The portion of it referred to, directs absolutely, that one-third of the whole estate be reserved, &c. for the use and benefit of the testator's wife; all that it can be fairly said to prohibit, or to postpone, is a *final distribution* among the children, until the coming of age of the youngest child. To be sure, the provision for his wife immediately follows the direction, in general terms, relative to a final distribution. . Then it says, " First, I will and direct one-third of my said estate be reserved &c. for her sole use and benefit *during her life,* and at her death be divided," &c. He could not have meant during *that portion of her life* after the youngest child came of age, even if he meant to give all that the appellant claims ; *and the referee reports, in effect, that not only the dower, but the additional one-third commences forthwith.* Otherwise, the accruing of her interest would be too remote ; and its enjoyment uncertain, and even improbable. He must have meant by the words " during her life," the whole of her life, commencing as soon as practicable after the testator's death. To the executors is committed, in the second paragraph of the will, the care of his whole estate ; and it is their duty to invest the whole proceeds of this estate immediately, if the whole be sold ; at all events to set apart enough to realize one-third for the benefit of the widow, and to hold the remainder in reserve for the benefit of the other beneficiaries ; the final distribution of the two-thirds of the estate to be made when the youngest

child comes of age.    This is the clear intention of the testator ; which, as I have said, is to be our only guide.

The judgment of the special term should be affirmed, with costs.

I perceive the presiding justice provides in his opinion that the costs of *all the parties,* with a reasonable counsel fee, should be paid out of the funds of the estate.    The widow, I believe, is the only party who has appealed ; and William T. Mills is the only party who has appeared *against* the appeal.

Judgment reversed.

[NEW YORK GENERAL TERM, November 4, 1858.  *Davies, Clerke* and *Ingraham,* Justices.]