---

*In re* HAYDEN'S ESTATE.

(*Surrogate's Court, Monroe County.*   April 8, 1889.)

1. WILLS—CONSTRUCTION—ELECTION.
   Testator's life was insured, some of the policies being payable to his wife.   He bequeathed to her for life the income of a sum of money, "including the proceeds of any insurance" on his life, "payable to her or otherwise."   He also gave her other property.   These provisions were to be in lieu of dower; but he provided that, if

the income should be insufficient for her maintenance, the executors should make up the deficiency from his other property. The executors were also to invest another sum, as a reserve fund, to be kept during her life, from the income of which was to be made good any deficiency in the income paid to her, as before mentioned. The residue of this income was to be paid to residuary legatees, and the principal of this fund "in reserve" was to become part of his residuary estate after the death of the wife and the payment of his debts. He then gave all the rest of his property to said residuary legatees. His wife was named as an executrix, and she chose to abide by the will. *Held,* that the attempt to include the insurance money payable to the wife in the fund set apart for her life-estate, and his subsequent gift of the fund to the residuary legatees, did not show such clear intention on the part of testator to give her property to another as would compel her to elect between a renunciation of the benefits of the will and the retention of the insurance money.

2. EXECUTORS—COMPENSATION.
An executor can receive no further compensation from his testator's estate, for his services, however meritorious, than is prescribed by statute, though his co-executors and some other persons interested under the will agree that he shall receive an additional sum.

3. SAME.
Under Code Civil Proc. N. Y. § 2736, providing that when the value of a decedent's personal estate shall exceed $100,000, each executor may receive the full compensation allowed by law to a sole executor, and the sum allowed may be apportioned among all the executors, according to the services rendered by them, respectively, when executors resign is to avoid the duties of their office the court may refuse any compensation to two of them who have done very little work, and give the whole sum allowed to the other, who has had the whole labor to perform.

Esther Hayden and others, executors of the will of Charles J. Hayden, deceased, resigned their trust, and tendered accounts for settlement. One question for determination was as to the amount of the commissions to be allowed to each. Code Civil Proc. N. Y. § 2736, provides that, when the personal estate of a decedent exceeds $100,000, each executor may receive full commissions, as if he were acting as sole executor, and the whole sum allowed may be apportioned according to the value of the services rendered by each.

*George F. Yeoman,* for Mrs. Williams, a legatee, and for the administrator *de bonis non.*

ADLINGTON, S. The will of the above-named decedent was duly admitted to probate in this court on the 19th day of April, 1888, and letters testamentary were thereafter issued to Esther Hayden, Charles A. Hayden, and Ella L. Williams, the persons nominated as executors in said instrument. These executors thereafter made an inventory of the personal property; and, under a provision of the will, carried on for a time the business in which the testator was engaged at his death. Disagreements soon arose, and in September, 1888, the said executors filed a petition asking to be allowed to resign their trust, and to have an administrator, with the will annexed, appointed in their stead. This petition was granted, a successor appointed, and the accounts of the executors have been filed. The said accounts state that, after the taking of the inventory, Mrs. Hayden and Mrs. Williams had nothing to do with the estate personally, but left the actual management thereof to Charles A. Hayden. A few days before the probate of the will, Esther Hayden, the testator's widow, and Charles A. Hayden, Ella L. Williams, and Maud Bush, the residuary legatees, made an agreement in writing, stipulating, among other things, that, after probate of the will and issue of letters thereon, Charles A. Hayden should act as agent of the executors in carrying on the business of the testator, at a salary of $5,000 per year. This agreement was affirmed in another instrument executed in August, 1888. The account of Charles A. Hayden, as executor, shows that the sum of $2,083.33 had been paid to himself as salary, under said agreement, for the time he had acted as executor and manager of the business aforesaid. This item is objected to on behalf of Mrs. Williams and her infant children who have contingent interests in this estate, and it must be disallowed. An executor cannot receive from the estate any greater compensation than the statutory commissions for

his own services, however meritorious or extraordinary they may be. *Collier* v. *Munn*, 41 N. Y. 143; *Smith* v. *City of Albany*, 61 N. Y. 446; *Morgan* v. *Hannas*, 13 Abb. Pr. (N. S.) 361–368; *Clinch* v. *Eckford*, 8 Paige, 412. The rule is not altered by the fact that the co-executors requested the rendering of the services, and agreed that they should be paid for from the funds of the intestate. *Smith* v. *City of Albany*, *supra*. It is quite probable that, in an action brought for the purpose, Mr. Hayden can recover personal judgments against the parties to this agreement for the services rendered, (*Wheelock* v. *Looney*, 15 Wkly. Dig. 126,) but the claim cannot be maintained against the estate.

A second question arises in respect to certain moneys paid to the widow, Esther Hayden, in satisfaction of policies of insurance upon testator's life. There was life insurance to the amount of $15,000, of which $10,000, by the terms of the policies, was payable to the widow, and was received by her, in cash, within a few weeks after her husband's death. The remainder of the insurance has been paid to the executors for the benefit of the estate. It is now claimed, on behalf of the contestants, that the insurance moneys received as aforesaid by the widow are assets of the estate, and should be turned over to the administrator with the will annexed. The parts of the will material on this point, are the following, viz.: *Second.* I give, bequeath, and devise to my beloved wife, Esther Hayden, for and during the term of her natural life, the sum of forty thousand dollars, including the proceeds of any and all insurance policies on my life, payable to her or otherwise; also, my dwelling-house, furniture, plate, etc. * * * I direct that said sum of forty thousand dollars be invested by my executors in good bonds and mortgages on real estate. in accordance with the savings bank law, or invested in accordance with the law governing trustees, on the approval of the surrogate; and that the income shall be paid to my wife semi-annually by my executors during her life. * * * The foregoing bequest and devise to my wife for and during her life are in lieu of dower; but, if the use and income thereof shall be insufficient for her reasonable support and comfort in her station in life, I direct that my executors shall pay any deficiency from my other property. * * * *Sixth.* I direct my executors to invest, in all respects, as directed respecting the foregoing bequests to my wife for life, and to hold in addition to such bequests and devise to her, and in reserve, at least the sum of ten thousand dollars, during her life, and to pay the income thereof semi-annually as follows: Such proportion, if any, as may be needed for additional income to provide a comfortable and proper support for her in her station of life, as directed in the second section of this will, and the residue of such income, if any, to my three residuary legatees and devisees, namely, my son, Charles, my daughter, Ella, and my granddaughter, Maud. I direct that the principal of such fund, in reserve, shall, after the death of my wife, and the payment of all my debts and the expenses of settling my estate, and all claims hereby created, fall into and become part of the property hereinafter bequeathed and given to my said three residuary legatees. * * * Subject to set-offs * * * I give, bequeath, and devise all the rest, residue, and remainder of my property, in three equal shares, to the residuary legatees above named." The contestants insist that the language of the "second" and "sixth" clauses, above set forth, taken in connection with the other provisions made for the widow, and the direction for final distribution of the estate, compels Mrs. Hayden to surrender to the estate the insurance moneys received by her, if she accepts the benefits conferred upon her by the will. It is conceded that she has chosen to abide by the will, and the equitable doctrine of election is invoked against her. What is meant by election is illustrated by the following examples taken from decided cases: "If a testator devises property, in which he has no interest whatever, to a third person, and in the same will devises a portion of his own estate to the owner of the property devised to such third person, the owner,

whose property the testator has assumed to dispose of, will be put to his election, and required to relinquish his own property or the devise under the will."
*Leonard* v. *Steele*, 4 Barb. 21. If a testator has affected to dispose of property not his own, and has given a benefit to the person to whom that property belongs, the legatee or devisee accepting the benefit so given to him must make good the testator's attempted disposition. If he insist on retaining his own property, which the testator has attempted to give to another person, equity will appropriate the gift made to him, for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of his rights."
*Havens* v. *Sackett*, 15 N. Y. 365.

It only remains to apply these principles to the case in hand. The widow has decided to take under the will. The moneys paid upon the policies of life insurance were her separate property. Does, then, the will of the testator attempt to dispose of that fund to some other person or persons? The second clause of the will indicates his intention that the insurance moneys shall form a part of the sum of $40,000 to be invested for her benefit during life, and also expresses his wishes as to the form of investment, but nothing more; and it is to be observed in this connection that the widow, to whom the insurance moneys were payable, is one of the executors who were directed to make the investment of them and of the rest of the $40,000; and that this direction as to the mode of investment did not, therefore, necessarily contemplate her ever parting with the control and custody of the fund, or the securities into which it might be put. The residuary clause, "I give, bequeath, and devise all the rest, residue, and remainder of my property in three equal shares," only disposes of that which belonged to the testator himself, and of nothing more. *Matter of Accounting of Frazer*, 92 N. Y. 250. In the sixth clause of the will, therefore, must be found, if anywhere, the testator's intention to make a disposition of the fund in controversy. That clause directs that at least $10,000, in addition to the previous bequests to his wife, shall be held "in reserve," during her life, for her benefit, and the income thereof, if needed, expended for her comfort and support. It then proceeds as follows: "I direct that the principal of such fund, in reserve, shall, after the death of my wife, and the payment of all my debts and the expenses of settling my estate, and all claims hereby created, fall into and become part of the property hereinafter bequeathed and given to my said three residuary legatees." It seems to me that the "funds in reserve" here directed to fall into the residuum is the $10,-000, to provisions concerning which this clause of the will is devoted. The $40,000 has nowhere been referred to as a fund in reserve. The words "in reserve" in this clause have precisely the same meaning in the second use of them as in the first one, and refer to the same fund. I do not think it would be just or equitable to enlarge the significance of an expression of this character, for the purpose of depriving the widow of the only property she appears to have in her own right, and to give it to the residuary legatees. To make a case of election there must be a clear intention expressed on the part of the testator to give that which is not his own property. If the testator's intention to dispose of property not his own is conjectural merely, the beneficiary will not be put to his election. *Mills* v. *Mills*, 28 Barb. 454–459; *Sheldon* v. *Bliss*, 8 N. Y. 35; *Wintour* v. *Clifton*, 21 Beav. 453; 2 Redf. Wills, p. 353, § 21, subds. 13, 16. The fact that the testator has expressly declared the provisions made by the will for his wife to be in lieu of dower, while he is silent as to any intention to deprive her of any other property or rights as a consideration for his gifts, also confirms me in the opinion that he did not purpose to take from her the absolute ownership of the life insurance moneys payable to her. The direction in said sixth clause that, after the widow's death, there should be paid out of the principal of such fund in reserve all of testator's debts, the expenses of settling his estate, and all claims thereby created, seems to be superfluous, and without import. Creditors and legatees are entitled to

payment without awaiting the widow's death. After the expiration of a year from the issue of letters (in the present case only a few days hence) they can compel payment. It is also to be presumed that in a short time there will be a judicial settlement of the estate, when all expenses of settling it will be adjusted and directed paid, according to law, out of the general fund, and not from this one "in reserve." I conclude, therefore, that Mrs. Hayden is not put to her election.

Full commissions for each of the three executors are asked for on this accounting, under section 2736, Code Civil Proc. In the case of Mrs. Hayden and Mrs. Williams, commissions are denied. They have rendered little service, their resignation is for their own convenience and advantage, and the trust is not yet executed. The decisions in *Matter of Allen*, 29 Hun, 7, and *Matter of Baker*, 35 Hun, 272, authorize withholding commissions from them. Mr. Hayden, on the other hand, has had substantially the entire charge of the estate until the revocation of his letters, and has done much work. One-half commissions are, therefore, allowed to him on the personal estate, viz., on $155,976.33, being the amount of the inventory and the increase thereon. The matter of the advance of income may stand over until the first judicial settlement of the estate, for adjustment.