In the Matter of the Estate of JOSEPHINE LAGE, Also Known as JOSEFIN LAGE, Deceased.

Surrogate's Court, Kings County, May 11, 1938.

*William J. Trenkle*, for Veronica Kratzer (formerly Veronica Lage), as executrix, etc., of William A. Lage, deceased executor, etc., of decedent, petitioner.

*Miles F. McDonald*, special guardian for William S. J. Lage, infant legatee.

*Israel Ben Scheiber* [*Harry Levy* of counsel], for Schranz & Bieber Co., Ino., a judgment creditor of William A. Lage, deceased husband and executor of decedent.

WINGATE, S. Josefin Lage executed the will which has been admitted to probate on January 21, 1921. So far as disclosed in this proceeding, her only asset at that time consisted of a fee interest in a parcel of real property at 1470 Myrtle avenue, Brooklyn.

By the " first " item of this will the testatrix bequeathed legacies of $2,500 each to her two children, Veronica and William, continuing: " And I make the payment of each of the said sums a charge against the house and premises known as 1470 Myrtle avenue; said sums are to be set aside immediately after my death and for each of the said children and is to bear interest from the date of my decease."

The residue of her estate was given to her husband who was nominated as executor.

On January 5, 1925, she became the owner as tenant in common with her husband of a half interest in a mortgage in the principal sum of $6,400, and on October 5, 1926, received a similar interest in another mortgage of $1,475, which, at the time of her death, on March 8, 1931, had been reduced to $1,225.

On February 16, 1931, the title to the Myrtle avenue property was changed by conveyance from complete ownership by the decedent to ownership by her as a tenant by the entirety with her husband.

The husband survived her, with the result that at her death his right of survivorship in the realty matured and he became the owner of the complete fee thereof. (*Bertles* v. *Nunan*, 92 N. Y. 152, 156; *Matter of Lyon*, 233 id. 208, 211; *Matter of Appelbaum*, 146 Misc. 603, 604; *Matter of Sitkin*, 151 id. 448, 453; *Matter of Collins*, 158 id. 798, 800; *Matter of Curley*, 160 id. 844, 847.)

By reason of these facts the only assets of her estate at the date of her death were the half ownership in the two mortgages with accrued interest thereon, aggregating a total of $3,867.01. Subsequently, interest totaling $57.19 accrued thereon, bringing the gross estate to the sum of $3,924.20.

On June 8, 1931, the husband-executor assigned all of the foregoing assets to himself as an individual, in consideration of one dollar, " and in pursuance of the terms of the Last Will and Testament of said Josephine Lage deceased and the distribution thereof." The legacies to the children have never been paid.

The husband has now died and the present account has been filed by his daughter as his executrix. In addition to the foregoing matters, the account reflects the payment by the deceased executor of funeral expenses of the wife amounting to $564.70, $200 paid for attorney's fees in connection with her estate, and $241 for medical and nursing expenses of her last illness. The last item is not a proper obligation of her estate as the solution of such charges is the individual duty of the husband. (*Matter of Burt*, 254 App. Div. 584, modfg. 160 Misc. 218; *Matter of Huedner*, 138 id. 101, 102; *Matter of Williams*, 162 id. 507, 510; affd., 254 App. Div. 741.)

Attached to the petition is a copy of the will of the husband which gives all real and personal property belonging to him in equal shares to the same two children named as the general legatees in the will of his wife. The petition seeks to obtain a determination that the general legacies to the children under the will of their mother became a charge in the nature of a lien upon the real property in the hands of the widower and are entitled to satisfaction therefrom in preference to the claims of creditors of the husband.

The principle by application of which attainment of this result is sought is that of equitable election. This has been stated to be " that a person shall not claim an interest under one instrument * * * without giving full effect to it as far as he can, and renouncing any right to property which would defeat the disposition." (*Leonard* v. *Crommelin*, 1 Edw. Ch. *206, *209, quoted in *Beetson* v. *Stoops*, 186 N. Y. 456, 463.)

In evaluating the applicability of this principle to the present situation, it will be helpful to recall the basis of the doctrine which *Beetson* v. *Stoops* (186 N. Y. 456, 462) conveniently indicates in its extended quotation from the notes of Mr. Swanston to *Dillon* v. *Parker* (1 Swanst. 359) as follows: " The owner of an estate having in an instrument of donation, applied *to the property of another*, expressions which, were that property his own, would amount to an effectual disposition of it to a third person, and having

by the same instrument disposed of a portion of his estate in favor of the proprietor whose rights he assumed, is understood to impose on that proprietor the obligation of either relinquishing, (to the extent at least of indemnifying those whom, by defeating the intended disposition, he disappoints), the benefit conferred on him by the instrument, if he asserts his own inconsistent proprietary rights, or if he accepts that benefit, of completing the intended disposition by the conveyance in conformity to it of that portion of his property which it purports to affect. *The foundation of the doctrine is still the intention of the author of the instrument;* an intention which extending to the whole disposition, is frustrated by the failure of any part; and its *characteristic,* in its application to these cases is, that *by equitable arrangement effect is given to a donation of that which is not the property of the donor;* a valid gift, in terms absolute, being qualified by reference to a distinct clause, which though inoperative as a conveyance, affords authentic evidence of intention. The intention being assumed, the conscience of the donee is affected by the condition, (though destitute of legal validity), not express but implied, annexed to the benefit proposed to him. To accept the benefit, while he declines the burthen, is to defraud the design of the donor." (Italics not in original.)

Study of this authoritatively approved statement of the reasons underlying the application of the doctrine indicate three matters of importance, namely: (1) That the principle is a purely equitable invention; and (2) that it is predicated upon an inferred intention of the testator, which (3) is deduced from the fact that the testator has purported to make a gift of something of which he was not the owner.

Whereas for devolutionary purposes it is frequently said that a will speaks from the date of death of the estator, all authorities are agreed that the intention of the author is determinable only as of the time of execution of the instrument. (*Morris* v. *Sickly,* 133 N. Y. 456, 459; *Matter of Title Guarantee & Trust Co.,* 195 id. 339, 344; *Matter of Thompson,* 217 id. 111, 114; *Salter* v. *Drowne,* 141 App. Div. 352, 356; affd., 205 N. Y. 204; *Man* v. *Man,* 197 App. Div. 547, 549; *Matter of Weil,* 151 Misc. 841, 848; affd., 245 App. Div. 822; *Matter of McCafferty,* 142 Misc. 371, 373, 374; affd., 236 App. Div. 678.) Unless, therefore, the present decedent intended at the time of such execution that her husband should be put to an equitable election, no such requirement may be spelled out of her will, since " The doctrine is founded on the intention, expressed or implied, of the donor. The intention of the donor * * * when not declared by express words, must be deducible by clear and manifest implication, from the provisions of the instrument of donation." (*Leonard* v. *Steele,* 4 Barb. 20, 21.)

In the present will no express words requiring an election are found, wherefore if the intention is to be held to be present a " manifest implication " must be deducible from the general terms of the instrument. On the noted basic principles of the doctrine, such a result is attainable only where there is " a donation of that which is not the property of the donor." Not only is this evident from the language of Swanston, quoted in *Beetson* v. *Stoops* (186 N. Y. 456, 462), but it was expressly determined in *Havens* v. *Sackett* (15 N. Y. 365), which is cited as an authority in the same case. This latter decision contains the following language (at p. 370): " It is indeed laid down, that in order to furnish a case for compelling an election, it must appear clearly and certainly that the interest attempted to be disposed of was such as the testator did not own."

To identical effect see *Leonard* v. *Steele* (4 Barb. 20, 21).

In the case at bar, however, at the time of the execution of the will, the testatrix was the unqualified owner of the property, a portion of which, to the extent of a charge thereon, she purported to give to her general legatees. This unqualified ownership continued for a period of more than ten years subsequent to the execution of the will, wherefore the only basis upon which a determination of equitable election is capable of predication, fails.

The situation is merely the ordinary one of a testamentary gift of an interest in real property owned by the testatrix at the time of the execution of the will which was revoked by the conveyance of such realty by the testatrix during her life with a consequent destruction of the potential rights of the donees therein. (*Ametrano* v. *Downs*, 170 N. Y. 388, 391; *McNaughton* v. *McNaughton*, 34 id. 201, 203; *Matter of Sinnott*, 163 App. Div. 817, 818; *Matter of Hilpert*, 165 Misc. 430, 433, and authorities cited.)

*Matter of Collins* (156 Misc. 783), upon which the petitioner relies, is not in point, since it concerned a statutory, and not an equitable, election, the different considerations applicable to which are noted in *Matter of Curley* (151 Misc. 664, 670; modfd. on other grounds, and affd. 245 App. Div. 255; 269 N. Y. 548.)

Even were the conditions here present those which would ordinarily make the principle of equitable election applicable, however, the doctrine, as noted, is of purely equitable origin and would be improper of application on the composite showing of the present record. The legatees have here permitted the husband to remain in undisturbed possession of the premises in question since March 8, 1931, during which period he incurred obligations to at least the nine creditors enumerated in the petition which still remain unpaid. It is a reasonable inference that some, at least, of these credits were extended to him on the faith of his record

ownership of this property, and equity should decline to intervene as against the holders thereof on behalf of individuals whose laches have been as egregious as are here indicated.

The prayer of the petition for the impressing of a lien upon the real property and for its sale in solution thereof is accordingly denied on the merits, with costs.

Enter decree on notice in conformity herewith.